United States District Court
Southern District of Texas
**ENTERED**
September 03, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| ANDREW J. MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00132 |
| | § | |
| CINCINNATI INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant Cincinnati Insurance Company's motion to dismiss for failure to state a claim. *See* Dkt. 21. Having considered the briefing and the applicable law, I recommend the motion be granted.

## BACKGROUND

Plaintiff Andrew J. Mitchell was, at all relevant times, an individually licensed public adjuster in North Carolina and South Carolina. Mitchell conducted his adjusting business through Mitchell Adjusting International, LLC ("MAI"). When MAI contracted with an insured to provide adjusting services, the insured agreed to pay MAI/Mitchell 10 percent of the amounts recovered, and to include MAI/Mitchell as an additional payee on any settlement checks.

Mitchell has sued Cincinnati because, after providing adjusting services to certain of Cincinnati's insureds for properties insured in North Carolina and South Carolina—namely, Swami Bapa, Inc.—Cincinnati "issued settlement instruments excluding [Mitchell] as the elected co-payee" or otherwise settled claims without compensating Mitchell for his adjusting services. Dkt. 16 at 9. Mitchell asserts that, under North Carolina and South Carolina law, Cincinnati has been unjustly enriched (quantum meruit). In the alternative, Mitchell asserts a claim of conversion under North Carolina law.

Cincinnati has moved to dismiss Mitchell's claims in their entirety, arguing that Mitchell lacks standing to pursue his claims and, in any event, fails to state a claim on which relief can be granted. In response, Mitchell seeks leave to file an amended complaint that would drop his South Carolina claims or, alternatively, for this court to dismiss those claims without prejudice. *See* Dkt. 23 at 1. Accordingly, I will direct my analysis only to Mitchell's North Carolina claims, as Mitchell has clearly stated his intent to abandon his South Carolina claims against Cincinnati in this lawsuit.

## LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Fifth Circuit "hold[s] pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); *see also Twombly*, 550 U.S. at 555.

**ANALYSIS**

In his response to Cincinnati's motion to dismiss, Mitchell clarifies that his primary claim is for conversion under North Carolina law, and that his unjust enrichment/quantum meruit claim under North Carolina law is pleaded only in the alternative. *See* Dkt. 23 at 1–3, 6. I will address each claim in turn. In doing so, I will assume, without deciding, that Mitchell has standing to bring his claims.

**A. CONVERSION**

Mitchell believes that Cincinnati is liable for conversion because "with notice of a co-payee designation that North Carolina law expressly authorizes, Cincinnati issued settlement instruments that excluded the designated co-payee." Dkt. 23 at 6. This claim fails under North Carolina law.

"There are, in effect, two essential elements of a conversion claim [under North Carolina law]: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012). Mitchell's conversion claim fails because he cannot establish ownership, individually or through MAI, over any portion of the settlement funds that Swami Bapa received from Cincinnati.

Mitchell seems to believe that he can establish ownership of such funds because Cincinnati had "notice of a co-payee designation that North Carolina law expressly authorizes." Dkt. 23 at 6. The North Carolina law Mitchell references is the statutory provision providing that a public adjuster contract "*may* specify that the public adjuster shall be named as a co-payee on an insurer's payment of a claim." N.C. Gen. Stat. Ann. § 58-33A-65(b) (emphasis added). But the mere

allowance of a provision naming a public adjuster as a co-payee in a public adjuster contract does not give the public adjuster an *ownership interest* in the insurer's payment of a claim. Indeed, such a result would run contrary to a different provision in the same statute on which Mitchell relies, which states: "The salary, fee, commission, or other consideration is the obligation of the insured, *not the insurer*." *Id.* § 58-33A-65(f)(5) (emphasis added). Therefore, Mitchell's conversion claim against Cincinnati should be dismissed.[1]

### B. Unjust Enrichment/Quantum Meruit

In the alternative, Mitchell asserts that Cincinnati was unjustly enriched when it "accepted and retained the benefit [of Mitchell's services] with notice of [Mitchell]'s engagement" by Swami Bapa, without compensating him. Dkt. 16 at 12. North Carolina law forecloses such a claim under these circumstances.

"The focus in the *quantum meruit* context is on whether there is an express contract on the subject matter at issue and not on whether there was a contract between the parties." *Cabrera v. Harvest St. Holdings, Inc.*, 876 S.E.2d 593, 599 (N.C. Ct. App. 2022) (cleaned up). Thus, the North Carolina Supreme Court has held: "When there is a contract between two persons for the furnishing of services or goods to a third, the latter is not liable on an implied contract simply because he has received such services or goods." *Vetco Concrete Co. v. Troy Lumber Co.*, 124 S.E.2d 905, 908 (N.C. 1962). Because an express contract governed compensation for the adjusting services at issue, North Carolina law will not imply another contract requiring Cincinnati to pay for those services. *See Cabrera*, 876 S.E.2d at 599. Moreover, North Carolina places responsibility for public-adjuster compensation squarely on the insured, "*not the insurer*." N.C. Gen. Stat. Ann. § 58-

[1] Mitchell argues that "[m]oney is subject to conversion when it can be identified and described." Dkt. 23 at 5. Mitchell is correct that money must be identifiable to be subject to conversion, but the mere identifiability of funds does not equate to ownership of the identified funds.

33A-65(f)(5) (emphasis added). Thus, Mitchell's unjust enrichment/quantum meruit claim against Cincinnati should be dismissed.

**CONCLUSION**

For the reasons discussed above, I recommend that Cincinnati's motion to dismiss (Dkt. 21) be granted, and that Mitchell's claims against Cincinnati be dismissed with prejudice.[2]

The parties have 14 days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 3rd day of September 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

[2] Mitchell's request for leave to amend should be denied. There is simply nothing that Mitchell (or MAI, for that matter) could re-plead to change the outcome here. This is true of the North Carolina claims, for all the reasons stated above, and for the South Carolina claims, for the reasons that Mitchell himself acknowledges. *See* Dkt. 23 at 1. Because the defects in Mitchell's case against Cincinnati are incurable, any amendment would be futile. To the extent that Mitchell seeks to pursue relief from the insureds, however, nothing about this dismissal forecloses such claims.